================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 5
BDC Finance L.L.C.
            Respondent,
        v.
Barclays Bank PLC,
            Appellant.




                Jeffrey T. Scott, for appellant.
                Craig A. Newman, for respondent.






PIGOTT, J.:

        This appeal arises out of a contract dispute between

Barclays Bank PLC, a major global bank based in the United

Kingdom, and BDC Finance L.L.C., a Connecticut-based hedge fund.

We hold that material issues of fact exist as to whether Barclays

defaulted under the parties' contract, and thus conclude that

                            - 1 -

neither party is entitled to summary judgment.

                                    I.

         In May 2005, the parties entered into a series of transactions known as "total return swaps", whereby BDC agreed to make payments to Barclays based on a financing rate, while Barclays agreed to make payments based on the return of certain underlying referenced assets.  The transactions were memorialized in several standard forms issued by the International Swap and Derivatives Association, including a Master Agreement, a Schedule and a Credit Support Annex (CSA).  The parties also negotiated and drafted a Master Confirmation Agreement.

         Under the agreements, each party had the right to demand collateral from the other party based on changes in the value of the underlying debt instruments.  Thus, Barclays was entitled to ask BDC to transfer a "Delivery Amount" of additional collateral to Barclays if Barclays was under-collateralized and BDC was entitled to ask Barclays to transfer a "Return Amount" of collateral if Barclays was over-collateralized.

         As relevant to this appeal, the Master Agreement contained a "Delivery of Collateral" clause that provided that Barclays was to transfer any Return Amount "no[] later than the Business Day following the Business Day on which [BDC] requests the Transfer of such Return Amount."

         The CSA set forth a two-tiered mechanism for resolving disputes between the parties on the calculation of collateral

calls.  In the event of a dispute, the parties were to first use an informal dispute resolution mechanism.  The informal mechanism required the disputing party to notify the other party of the dispute and transfer any undisputed amount, and the parties were then to attempt to resolve what remained of the dispute.  If the dispute could not be resolved in this informal fashion, a formal mechanism was in place that required the party making the collateral call to recalculate the call by "seeking four actual quotations at mid-market from Reference Market-makers for purposes of calculating Market quotation, and taking the arithmetic average to determine the Reference Assets' value."

On October 6, 2008, the parties exchanged competing collateral call requests.  Barclays demanded a Delivery Amount of $11,750,000 in collateral from BDC and BDC responded by demanding that Barclays transfer a Return Amount of approximately $40 million.  Barclays did not make a transfer, but instead responded by email stating that it did not agree with BDC's collateral call, asking whether BDC "wanted to invoke the dispute mechanism", and reiterating that Barclays was due collateral from BDC.  BDC and Barclays eventually agreed after discussion that day that BDC owed Barclays $13.52 million.  BDC sent Barclays a payment.

On the next day, October 7, BDC and Barclays discussed BDC's $40 million collateral call and, after taking into account the transfer made by BDC, Barclays agreed that it owed BDC

$5,080,000.  No transfer was made that day.  Rather, Barclays transferred $5 million to BDC on October 8, claiming that the delay of the transfer was due to processing issues.  Barclays also issued a new demand for $20.5 million in additional collateral to BDC.

On October 8, BDC sent Barclays a document entitled "Notice of Failure to Transfer Return Amount".  The Notice stated that Barclays had failed to "either (i) pay the relevant Return Amount or (ii) notify BDC that Barclays disputes the calculation of the Return Amount and make a payment with respect to the undisputed amount."  The Notice further informed Barclays that "if this failure continues for two business days, an Event of Default will have occurred."

BDC paid collateral calls made by Barclays on October 8 and October 9, "under protest and without prejudice" to any claims of BDC.

Barclays sent BDC further collateral calls on October l0 and October 14.  BDC refused to pay those collateral calls, responding that Barclays had defaulted on the $40 million collateral call and any outstanding transactions had been terminated.

On October 14, BDC emailed Barclays a document entitled "'Notice of Designation of Early Termination Date' (the "Termination Notice").  The Termination Notice stated that an "Event of Default" ha[d] occurred under the Master Agreement by

virtue of Barclays' failure to transfer the Return Amount reflected in the Return Demand on or prior to the second business day after the date of the Notice of Failure."  Barclays responded, contesting the claim of default and contending that it had complied with the dispute resolution procedure under the Agreement and had promptly disputed BDC's $40 million collateral call.  On October 23, Barclays sent BDC a letter terminating the Agreement due to BDC's alleged default.

### II.

On October 17, 2008, BDC filed this action for breach of contract and declaratory judgment.  Barclays answered and counterclaimed alleging corresponding causes of action.

Both BDC and Barclays moved for summary judgment. Supreme Court denied BDC's motion, granted Barclays' cross-motion to the extent of dismissing that portion of BDC's cause of action for breach of contract alleging that Barclays was required to pay the full amount of BDC's collateral call of October 6, 2008.  The court otherwise denied the motion and ordered that the parties appear for a status conference to discuss the remaining issues.

The Appellate Division, with two Justices dissenting in part, modified by granting BDC's motion, and otherwise affirmed (110 AD3d 582 [1st Dept 2013]).  The court held that the evidence in the record established "as a matter of law" that Barclays did not properly dispute the October 6 collateral call because Barclays neither notified BDC of the dispute nor transferred the

undisputed amount of $5,080,000 by October 7, 2008 (id. at 585).
It also noted that Barclays' payment of $5 million on October 8
was a day late, and although BDC had notified Barclays that it
then had two days to pay the Return Amount, Barclays did not
remit the $40 million, placing it in default (id.). Barclays'
default, in turn, entitled BDC to terminate the transactions and
demand return of its collateral (id.). "Because Barclays did not
return BDC's collateral, it breached the agreements, and summary
judgment on liability should have been granted to BDC" (id.).

The court rejected Barclays' argument that its $5
million payment within the two-day period cured any default
(id.). The court held that because Barclays did not pay the
undisputed amount by the deadline, it lost any right it may have
had to suspend the payment of the full $40 million (id.).

Finally, the court held that Barclays was not entitled
to summary judgment on its counterclaims alleging that BDC failed
to meet Barclays' collateral calls on October 10 and 14, 2008
(id. at 588). It held that "BDC was not required to meet those
calls because at the time they were due, Barclays was already in
default and BDC had terminated the transactions" (id.).

The dissent would have found that questions of fact
exist as to whether Barclays gave BDC notice of the dispute and
whether there was any undisputed amount owed by Barclays to BDC
when Barclays refused to pay the $40 million return amount on
October 6, 2008 and whether Barclays' responses that day,

considered in the light of the past practice of the parties, were sufficient to invoke the informal dispute resolution mechanism agreed by the parties (id. at 591).

The Appellate Division granted Barclays leave to appeal, certifying the question whether its order was properly made.

III.

The dispute in this case centers around the $40 million collateral call made by BDC to Barclays on October 6, 2008. BDC claims that under the terms of the Agreement and CSA, that Return Amount was due by the close of business on October 7. BDC separately argues that Barclays could have suspended the due date of that return amount by complying with the dispute mechanism contained in the CSA, but that Barclays failed to do so.

BDC's first claim is that the "Delivery of Collateral" clause of the Master Confirmation unconditionally required Barclays to transfer the return amount by the next business day, or October 7. The provision provides, in relevant part, that "Notwithstanding anything in the Credit Support Annex to the contrary: . . [Barclays] shall Transfer any Return Amount in respect of Transactions not later than the Business Day following the Business Day on which [Barclays] requests the transfer of such Return Amount."

"Unless statutory language or public policy dictates otherwise, the terms of a written agreement define the rights and

obligations of the parties" (<u>Abiele Contr. v New York City School Constr. Auth.</u>, 91 NY2d 1, 9 [1997]).  We have held that "where the parties have agreed to conduct themselves in accordance with the rights and duties expressed in a contract, a court should strive to give a fair and reasonable meaning to the language used" (<u>id.</u>).

The clause at issue, by its very language, discusses the time for transferring the Return Amount.  This provision also negates the Dispute Resolution procedure found in the CSA.  As the Appellate Division dissent recognized, BDC's own course of conduct during the dispute refutes its interpretation of the provision.

With regard to the dispute resolution mechanism under the CSA, the first step requires that the disputing party must notify the other party of the dispute.  BDC does not deny that Barclays gave notice that it disputed the collateral call. Indeed, within hours of receiving the collateral call, Barclays emailed BDC stating that it did not agree with the call, and queried whether BDC wanted to invoke the dispute mechanism.

Next, the disputing party must transfer the "undisputed amount", if any, to the other party.  BDC claims that Barclays was required to transfer the undisputed amount of $5,080,000 by the close of the business day on October 7.  Barclays' failure to make the full transfer of that amount on that day, BDC maintains, resulted in the remaining obligation to pay the $40 million.

Barclays maintains that it paid $5,000,000, which represented over 98% of an amount due to BDC.  Further, it explains that the $80,000 shortfall was credited to BDC on October 8 as part of the collateral transfers between the parties.  It also claims that the failure to transfer the full undisputed amount does not then result in the total collateral call being due and owing, particularly when BDC failed to give notice of any issue with the undisputed amount payment or an opportunity to cure.

We conclude that questions of fact exist as to whether Barclays complied with the undisputed amount provision.  The record reflects that Barclays and BDC spoke with one another about the dispute, including at least two telephone conversations on October 6 and 7, 2008.  The undisputed amount, Barclays maintains, reflected an agreement about the outstanding collateral calls made by both parties.  Barclays then undisputedly transferred $5 million to BDC on October 8.  A question of fact exists as to whether BDC received the full benefit of the amount it was owed when Barclays paid the $5 million and reduced the amount of its collateral call to BDC by the additional $80,000.

Finally, because questions of fact exist as to whether Barclays defaulted, Barclays was not entitled to summary judgment on its counterclaims alleging that BDC failed to meet the October 10 and 14 collateral calls.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed and the certified question answered in the negative.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order modified, without costs, by remitting to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed and certified question answered in the negative.  Opinion by Judge Pigott. Chief Judge Lippman and Judges Read, Rivera and Abdus-Salaam concur.  Judges Stein and Fahey took no part.

Decided February 19, 2015